We have counsel for Mr. Diaz here in person and it's Ms. Kitchen and Mr. Feeler splitting time. We're going to set the clock to indicate how much time you each have to help you keep track of your time and not use each other's time and then Ms. Hagner is here by video. All right. Ms. Kitchen, you and Mr. Feeler have 10 minutes which you've divided between you. Were you intending to save any of your joint time for rebuttal? Ms. Kitchen Yes, we would like to please reserve two minutes for rebuttal. Ms. Laird Coming out of your time, his time? Ms. Kitchen So I'll have four and then he'll have four and then we'll save two. Ms. Laird And then we'll have two. Okay, thank you. Ms. Kitchen That's correct. Ms. Laird All right, please go ahead. Ms. Kitchens Good morning, Your Honors, and may it please the Court. My name is Anne Kitchens, appearing on behalf of Petitioner Alberto Pupo-Diaz. I'm joined at counsel's table by Mr. Jacob Feiler. We're supervised law students from Loyola Law School under the supervision of Mr. Martin Estrada, who is also present at counsel's table. I will begin by arguing that Mr. Diaz is entitled to asylum relief because of the past persecution he suffered while in Cuba. Then Mr. Feiler will argue that Mr. Diaz is entitled to asylum relief because of his well-founded fear of future persecution and that the BIA committed reversible error when applying Convention Against Torture and that substantial evidence warrants cat relief. First, Mr. Diaz is entitled to asylum relief because of the cumulative effect and the increasing severity and frequency of the past persecution he faced under the hands of the Cuban authoritarian regime where dissidence and political opposition are prohibited and suppressed by any means necessary. From the time he was a university student, Diaz was harassed on account of his political views, but these attacks only increased and intensified over time and finally reached a breaking point during his last year in Cuba. In March 2018, he criticized- Can I interrupt you for a moment, please? Returning to his time at the university, is there any evidence that he was harmed in any way beyond- I know eventually he was expelled, but was he detained, assaulted? Did anything happen at the university beyond eventually his expulsion after he didn't finish a final project? No, nothing happened. He had always dreamed of becoming an architect and getting his degree and completed all of his exams on time, but no, beyond being expelled from university, nothing else happened. So the IJ looked at two incidents, one where he was detained on the street and threatened, and the other where he was accosted on the street and kicked and beaten and found that they didn't rise to the level of past persecution. That seems to be in line with our decision in Gao and Prasad. So how do you distinguish those cases? So our position is that the BIA and the IJ ignore the full scope of Diaz's harm and in fact, at the wrong conclusion. It's the cumulative effect and in addition, the increasing severity and frequency of the harms that he experienced in the last year. They focused on two isolated incidents which I believe were the October 15th incident and then the January beating, but they didn't acknowledge the fact that in March, he was accused of insubordination and defamation while at work against the government, which in Cuba is cause for arrest and detention. It's a crime there. And then further, when a reporter visited the factory, he voices criticisms to the reporter and he then was followed home by police officers who verbally threatened him, who followed up with him later in the January beating, the same officers and the DTI officer followed him home and beat him up to the point of hospitalization for seven days. He was bedridden. So our argument is that when you take all of this into consideration and actually examine all the facts on the record, especially within his last year, it's a pattern of increasing harms and this court has found in Cotoba v. Gonzalez and in Coroblina that incidences involving a kick, a punch and some pushing demonstrated past persecution based on their cumulative effect on the petitioner and in so holding noted that the facts were occurring with increasing frequency, which is the case here. And additionally, when you look at the bigger picture of Cuba as a country where freedom of expression and political dissidence is a crime, they throw people in jail for this, they beat them on the streets, they torture and they kill them, which is evidenced in the record at 249, the Human Rights Report. It's just a misunderstanding of the record to take two isolated incidences and saying this is not enough for past persecution. Thank you, Ms. Kitchens. Okay, thank you very much. Mr. Feeler or Feiler? Yeah, thank you. Thank you, Your Honors, and may it please the court. My name is Jacob Feiler and I represent Petitioner Diaz. To begin, Petitioner Diaz has satisfactorily shown that he has a well-founded fear of future persecution because this case is on all fours with this circuit's precedent in Rodriguez-Ramon. Now in Rodriguez-Ramon, the petitioner was a Cuban national who had held lifelong anti-communist beliefs. Because of these anti-communist beliefs, he feared that Cuba would persecute or torture him if he remained in the country. Therefore, he fled to the United States. Now this court held that the petitioner in Rodriguez-Ramon had demonstrated that he would be severely punished if returned to the country because he could face up to three years in prison and inhumane prison conditions just because he decided to flee the country. But Mr. Puput Diaz's evidence of this is contained in a declaration that he submitted to the BIA. Is that correct? No, Your Honor. At the immigration judge hearing on AR-218, Petitioner Diaz explained to the immigration judge that he feared that as a deserter, just like the petitioner in Rodriguez-Ramon, and explained on AR-157 and 177 that he feared that his life and freedom were in danger because Cuba would persecute and torture him. Did he argue this issue in his brief to the BIA? To the BIA? Yes. He did mention on AR-105 and AR-67, Diaz did refer to the IJ's finding that he lacked evidence sufficient to establish his life and freedom were in danger and explained that he might be imprisoned for up to three to 15 years. This is because he would be treated as a deserter. Was he pro se before the BIA? Yes, Your Honor. So if you're worried that Diaz hasn't exhausted his claim at the immigration or BIA level, first I would argue he has exhausted it by mentioning on AR-218 that he feared that Cuba would treat him as a deserter. But moreover, just as you said, Your Honor, this court has stated that they treat pro se petitioners differently and do not apply the exhaustion doctrine formalistically when it's a pro se petitioner. The question that I have is I think the arguments you're citing were actually statements he made in the declaration as opposed to in his brief to the BIA. And we have case law saying that issues to be exhausted need to be raised in the brief. Does that extend to arguments made in an attached declaration or however this declaration was submitted to the BIA? Yes, Your Honor. And on what authority do we conclude that that's the case? I can get that for you and we can submit that after. But I would say that petitioner not only has just exhausted it both at the immigration judge, which is the first point where he was able to do this. Moreover, in his declaration to the BIA, he also mentioned his fear that the immigration judge did not accurately review the record that he was arguing for. And like Your Honor said, he's a pro se petitioner. So this court treats pro se petitioners differently under the exhaustion doctrine because they do not know the laws as well as somebody who was being represented by a counsel. Can you clarify how the declaration was submitted? Was it in fact attached to the brief or how did that come before the BIA? I cannot tell you that off the top of my head, Your Honor. But I do know that in his declaration and to his in his petition to the BIA, he mentioned that he feared that he would be in prison for 3 to 15 years and mentioned the BIA's lack of taking in consideration his fear of persecution and torture. I see my time is up. I'd like to reserve two minutes for rebuttal. So unless there's any other questions by Your Honors. Thank you. Ms. Hagner. Hagner. I'm not sure I pronounced that right. Yes, Your Honor. May it please the court. Jaclyn Hagner on behalf of the Attorney General. The court should reject petitioner's challenge to the agency's denial of asylum, withholding of removal and cap protection. First, in regards to asylum, substantial evidence supports the agency's decision that petitioner failed to establish past persecution on account of his political opinion. And I'll just turn to address petitioner's argument before this court today in regards to the cumulative effect of the harm petitioner experienced. So the thrust of petitioner's claim of persecution before the agency focused on the October 15th Now, the agency specifically addressed petitioner's claim that each of these incidents were interrelated. And specifically, what we have here is the agency discussed the circumstances of each incident. So beginning with the March 29th complaint at the factory and then this October 15th encounter with the police. And here the agency noted that this was a 10 minute conversation during which petitioner was not harmed. Now, petitioner testified that the police officers referenced this March 29th complaint and said, and petitioner said that he that's why he was confronted and that he should change his ways of thinking. Now, the immigration judge then asked petitioner to explain what the what the police officers were referring to. Again, petitioner said that it was they were referring to this March 29th complaint, but really could not explain why. And so what this amounted to is the agency determined was a vague threat. And then, and it's also important to notice here that this occurred six months after the March 29th complaint, without any intervening circumstances. And in the overall scheme of things, the the agency noted that this was the first time that petitioner ever experienced any incident in his nine years at working at the cloth factory. After that confrontation, three months later, again, nothing happened during that three months. He's been assaulted on January 24, by a police officer and a DPI agent. Now, petitioner testified that they referenced the March 29th complaint during the assault. And this is where the agency concluded that what occurred is unfortunate, but more consistent with retaliation for his complaint at the factory. Now, the can I turn to the, the claims of fears of future persecution? It seemed the immigration judge noted that the petitioner asserted that he would be considered a deserter. And so he had a fear of returning to the country and future persecution, but only considered that in addressing his status as a whistleblower. At his workplace, did the immigration judge err by not addressing this issue of political persecution on account of leaving the country? No, Your Honor. So petitioner's deserter status was never asserted as a basis for asylum in front of the immigration judge, which is the number one reason why this case is distinguishable from Rodriguez-Roman. I would also like to, as a threshold matter, point out... So what more did he need to do to raise it before the immigration judge? He needs to present evidence in support of that claim, Your Honor. And what about his testimony in the country condition reports? Right. So in regards... First of all, it is not clear based on the record that petitioner would be treated as an illegal departure. And particularly in petitioner's opening brief before this court, he states on page two that he received a visa to Nicaragua. So right there, as a threshold matter, it is unclear, based on the record before this court, whether or not petitioner illegally departed from Cuba. In regards to the country condition reports, I think this is a really important point. The only country condition evidence in the record before the immigration judge was a DHS country report from 2018 for Cuba. In reviewing those country condition reports, that mentions generally that Cuba tortures political dissidents. And it also discusses the inhumane treatments in the prisons in Cuba. It does not discuss at all treatment of deserters. The evidence that petitioner is referencing to support their claim that the agency disregarded country reports is evidence that appears to have been included in a bond hearing. And this evidence, again, it looks at their excerpts from the Amnesty International report. And the immigration judge actually discusses this evidence with petitioner on the record and says, I have here these documents. Would you like for me to consider anything in these bond hearing documents? And that's when the petitioner says no. However, the immigration judge then allows for petitioner to the opportunity to later on change his mind. And petitioner never does. Petitioner does not ask for this evidence to be considered. And as we all know, the petitioner bears the burden of presenting evidence in support of his claim for relief. So for that reason, there's simply just no evidence for this court to consider in support of the deserter claim. And it's just not, it's not administratively exhausted and it's not properly before this court. The agency's decision regarding his well-founded fear of future persecution should be afforded deference. And the evidence in the record does not compel a contrary result in this regard. Does it make any difference that he's pro se as to that argument that when he's asked whether she should consider it, he says no. Does it make any difference that he's a pro se litigant? Yes, Your Honor. Pro se litigants are afforded more leeway. However, there's only so much an immigration judge can do. One, offered the opportunity to consider the evidence and then also offered the opportunity to change his mind. At that point, as a pro se litigant, that's, that's all the immigration judge can do. And in regards to the, I think it was brought up the BIA appeal. Again, the pro se litigant appealing this decision to the board is afforded a significant leeway in raising issues. But the case law regarding that really focuses on pro se litigant not using the correct terms of art. Here, we know that petitioner understands the correct term here, which is deserter status, and his declaration does not say the word deserter status at all. And it doesn't even really get close to it. I would say the best, the best it gets is he states that he fears that he'll be in prison for three to 15 years and he tries to link that statement to what he knows about the prison conditions in Cuba. Is it sufficient for him to present that statement in his declaration, as opposed to in his brief to the BIA? Your Honor, I don't know the answer to that. And what I would offer to this court is that even if it were sufficient, it still does not, it still does not raise the claim of deserter status. It falls far short of it, particularly under this court's case law in regards to how much deference is allowed for a pro se petitioner. I think you had mentioned that he had submitted an Amnesty International report. Did that report mention anything about the treatment of deserters in Cuba? Yes, Your Honor. So the Amnesty International excerpts were included in this bond hearing, and they do discuss deserter status. Again, the record is not clear. We don't know what the immigration judge was thinking, but we do know the immigration judge saw those documents and asked the petitioner, should I consider this? And the petitioner said no. And then the immigration judge asked, well, if you change your mind, let me know. And the petitioner never did. And I would also bring up that, so after the petitioner testified fully, at the conclusion of his testimony, the immigration judge then had a question for him and asked him, why do you fear returning to Cuba? At that time, at the end of his entire testimony, it's the first time in the entire proceeding, the petitioner mentioned deserter status. And the immigration judge, in fact, saw that as undermining his entire claim of persecution, because the petitioner didn't say, I fear returning to Cuba because of the assault on January 24th, and I'll be assaulted again. Then it is very important to also notice the petitioner proceeds to provide a 20-minute closing argument, and at no point during that 20-minute closing argument did the petitioner mention his deserter status. And again, this is not a situation where the petitioner was not aware of the correct term, because he used it himself when prompted by the immigration judge. Lastly, in regards to cat protection, here, the agent, the substantial evidence supports the agency's conclusion that the petitioner did not establish eligibility for cat protection. Particularly, an independent cat analysis was not required in this case, because the circumstances were the same for both his claim for asylum and his claim for cat protection, and that is this court's case law, and Kamalthus stating that. And then further, petitioners claim that the agency did not consider the country reports. Again, I'll just reference that the only evidence before the court was a DHS report, and that evidence does not compel a conclusion that a petitioner faces a particular, or a particularized risk of torture if returned to Cuba. If there are no further questions, I see my time has expired, and so for the foregoing reasons and the reasons in response on this brief, the court should deny the petition for review. Thank you very much. Thank you. And Mr. Feeler. Thank you, Your Honors. There's a couple points I'd like to address. First, the government concedes that Diaz did mention at his immigration judge hearing, which you can see at AR 218, that he feared that he would be treated as a deserter if he were returned to Cuba. Now, the government believes that he did not present enough evidence at this immigration judge level, and that this was an afterthought of a claim. However, as a pro se petitioner, the court can't expect Diaz to have done much more than explain to the court that he believes that he would be treated as a deserter, and that his life and freedom were going to be in danger if he was returned. Moreover, the immigration judge did not even consider Rodriguez-Ramon, which would have backed up his fear of desertion, and had she done this, she might have come to a different conclusion. That alone warrants remand. Now, I'd also like to state that these cat issues that we mentioned in our brief independently also warrant relief. Now, there's two points to this one. First, the BIA and the immigration judge committed reversible error by combining their asylum and withholding removal analysis with their cat analysis. Now, this court has stated in Camalthus v. INS that claims for relief under cat are analytically separate than claims for asylum and withholding removal. And this court expressly rejected the BIA's conclusion that an applicant necessarily fails because they may have only presented the same evidence for cat relief as they did for asylum and withholding of removal relief. That is the same exact reasoning that the immigration judge made on AR-123, where she said an independent cat analysis is only required where evidence that a respondent would face torture for reasons unrelated to his unsuccessful claims for asylum and withholding or removal are separate. I see my time is up, but we also have that second cat relief claim that warrants separate relief to. So, if there's no further questions from your honors. Thank you. Thank you. Thank you, counsel, for your arguments this morning. They were very helpful. I'll take this case under submission.
judges: BADE, LEE, Cardone